GARFIELD AKERBERG AND ANOTHER v. ELMER McCRANEY.[1]

December 20, 1918.

No. 20,976.

**Vendor and purchaser — unrecorded agreement — rights of purchaser as against heirs of vendee.**

1. The record owner of real estate entered into an agreement to sell and convey the same to a grantee therein named, which was never recorded. Subsequent to the death of the grantee, the grantor conveyed the land to the grantee's widow. The defendant purchased the premises in good faith, paying an adequate consideration therefor, relying upon the record title without knowledge of such unrecorded contract, and received title through mesne conveyances from the widow, all of which were of record. *Held*, that defendant obtained good title to the premises as against the heirs of deceased.

**Same — exclusion of documentary evidence.**

2. The correspondence leading up to the conveyance by the grantor in such contract was properly excluded upon the trial as being immaterial under the issues.

**Same — immaterial evidence.**

3. Evidence to show that by slight inquiry in the vicinity of the land it could have been ascertained that the grantee named in the contract was, at the time of his death, occupying the premises as vendee under the contract, was properly excluded as being immaterial.

Action transferred to the district court for Hennepin county to determine adverse claims to certain lands. The cause was tried before Hale, J., who made findings and ordered judgment in favor of defendant. From the judgment entered pursuant to the order for judgment, plaintiffs appealed. Affirmed.

*Marshall A. Spooner,* for appellants.
*O'Brien, Young, Stone & Horn,* for respondent.

QUINN, J.

Action to determine adverse claim to 160 acres of land in Pennington county. The cause was tried irrespective of the pleadings upon a

[1]Reported in 169 N. W. 802.

stipulation of facts including certain letters to be offered subject to objection by defendant as to their materiality, and certain depositions offered by plaintiffs which were excluded as being immaterial. The trial court made findings and conclusions in favor of the defendant upon which judgment was entered and plaintiffs bring this appeal.

A somewhat detailed statement of facts may tend to a better understanding of the contentions of the parties. Carl G. Akerberg obtained a patent for the land under the homestead laws in June, 1889. In 1892 he executed to the Security Trust Company a mortgage thereon for $500, which was assigned to Sarah G. Peck of New Haven, Connecticut. Upon default in its conditions the mortgage was foreclosed and the land bid in for Mrs. Peck who thereafter became the owner thereof. On October 7, 1898, Sarah G. Peck (a widow) executed to Carl G. Akerberg a contract whereby she agreed to sell and convey to him, by special warranty deed, the land in question, for the consideration of $850, of which amount $100 was paid at the time, the remainder to be paid in deferred instalments of $100 in November of each year until 1903, when the balance of $350 was to be paid and the deed given. This contract was never recorded, but Akerberg resided with his family upon the premises from the time he acquired title from the government until his death which occurred on February 23, 1900. After Mrs. Peck became the owner, Akerberg occupied the land as her tenant until the execution of the contract, after which he occupied the same as vendee thereunder. The instalment which matured in 1899 was paid and the contract was in full force and effect on February 23, 1900. At his death Akerberg left him surviving as his sole heirs-at-law his widow, Mathilda, and their four minor children, viz.: Garfield, Arthur, Carl and Elmer, who continued to reside upon the premises.

John K. Hannay was the manager and principal owner of the bank of St. Hilaire which acted as the agent of Mrs. Akerberg in procuring the quitclaim deed hereafter referred to, and George B. Clifford & Company represented Mrs. Peck therein. Accordingly on January 15, 1901, the latter executed to Mathilda Akerberg a quitclaim deed to the land in question for the stated consideration of $850, in which the granting clause was as follows:

"Do by these presents grant, bargain, sell, release and quitclaim unto

the said party of the second part, * * * all that right, title, interest, claim or demand in and to the following" * * * etc.

On March 25, 1901, Mathilda Akerberg executed to John K. Hannay a warranty deed of the premises for the consideration of $1,600, which, together with the quitclaim deed referred to, was recorded in the office of the register of deeds of the county. Hannay went into possession of the premises, and Mrs. Akerberg took her children and established a home · elsewhere in the state. On June 12, 1902, Hannay sold and conveyed the land, together with an adjoining 40-acre tract, by warranty deed to the defendant Elmer McCraney for the consideration of $3,400. McCraney was a stranger in the community, unacquainted with the Akerbergs, and had no knowledge or notice that the Peck-Akerberg contract had ever existed. He paid full value for the land, relying in good faith upon the record title without further inquiry. Mrs. Akerberg and two of the sons, Carl and Elmer, died prior to the year 1915 without having married, so that at the time of the commencement of this action plaintiffs were the sole living descendants of Carl G. Akerberg,·and no proceedings were ever instituted for the probating of the estate of any of the parties deceased. At the commencement of this action each of the plaintiffs was 31 years of age. Neither had any knowledge of the transactions between Mrs. Peck and their mother, or of the conveyance to John K. Hannay until shortly before the bringing of this action in 1915. No question is raised as to laches or the statute of limitations.

It is contended on behalf of the plaintiffs: (1) That the correspondence between the Cliffords and the bank of St. Hilaire was admissible as tending to show a purpose on the part of John K. Hannay to avoid the probating of the estate of Carl G. Akerberg to cut out the minor heirs and procure a record title, fair upon its face, so that he might obtain an apparent clear title through the quitclaim deed from Mrs. Peck; (2) that the depositions were material and should have been received as bearing upon the equities, in that they would have disclosed (upon slight inquiry in the vicinity of the land), the fact that Carl G. Akerberg, at the time of his death, was in possession of the premises as vendee under the contract referred to; (3) that as a matter of law the rights of the parties should be determined solely according to the priority of time and their respective equities, precisely as though our

recording statute had never been enacted; (4) that upon the death of Carl G. Akerberg his interest in the land passed immediately to his heirs and the title thereto vested in them at that time, and, his estate not having been probated, there existed no conveyance or instrument which could have been recorded; (5) that the unusual wording of the granting clause quoted was such as to put the defendant upon inquiry as to the chain of title.

It is insisted on behalf of the plaintiffs that they are the owners of at least an undivided half interest in the homestead eighty and of an undivided one-half interest of the two-thirds of the other eighty.

The cause was tried with care and the claims and interests of the litigants looked after. However, we are of the opinion that, as between the parties to this action, the rejection of the proffered testimony was correct. While it is true that the interest Carl G. Akerberg had in the land at the time of his death passed immediately to his heirs, yet that interest was such only as he acquired through the Peck contract, which was a conveyance such as might, and under the statute should, have been recorded. It is not enough to say that, because the plaintiffs did not know of its existence, it need not be recorded. As stated by counsel in their behalf: "The object of the registry laws is * * * to protect recorded titles * * * as against the gross negligence of parties in not recording their evidence of title," etc. Such is the rule announced in Clark v. Greene, 73 Minn. 467, 76 N. W. 263. The defendant in this case relied upon the record in good faith, and paid an adequate consideration for the land without actual notice or knowledge of any outstanding rights or claims of the plaintiffs.

If Carl G. Akerberg was desirous that his heirs avail themselves of the full benefit of his interest in the land under the contract, he should have seen to it that the instrument was placed of record. Having failed to do so, and the defendant having purchased in good faith relying upon the record title, he (the defendant) is entitled to the protection of the recording act.

The contention that the quitclaim deed referred to was in itself sufficient to put the defendant upon inquiry as to the rights of the grantor therein is untenable. The instrument is in the form of an ordinary quitclaim deed. Section 2, c. 51, Laws of 1875 (G. S. 1878, c. 40,

§ 21), which applies, places deeds of quitclaim on the same footing as warranty deeds, and provides that every conveyance by deed should be recorded in the office of the proper register of deeds, and every such conveyance not so recorded is void as against subsequent purchasers in good faith for a valuable consideration, whose conveyance is first recorded.

While the correspondence relative to the giving of the quitclaim deed might have disclosed the fact that Mrs. Peck declined to give any conveyance other than in strict accordance with the terms of her contract with Carl G. Akerberg, unless indemnified against all claims to the land that might be made by or through his heirs, and the depositions might have shown all that is claimed by the plaintiffs, yet we are of the opinion that the same were properly rejected as being immaterial under the circumstances in this case.

The judgment appealed from is affirmed.